IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RICHARD JACK MILLS,

                 Petitioner,

      v.

JEAN HILL, Superintendent, Snake
River Correctional Institution,

                Respondent.

Civil No. 03-1227-CO

FINDINGS AND RECOMMENDATION

COONEY, Magistrate Judge:

Petitioner brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254. In his petition

for habeas corpus relief (#2), petitioner raises claims for inadequate assistance of trial counsel,

ineffective assistance of appellate counsel, and errors by the post-conviction court and the Oregon

Court of Appeals.

## I.  BACKGROUND

Petitioner was convicted of Assault in the First Degree, following a jury trial, in Malheur

County Circuit Court, Case No. 96037840C. Petitioner was sentenced to a ninety month prison term

followed by three years post-prison supervision. (Ex. 101.)

Petitioner directly appealed his convictions to the Oregon Court of Appeals. The Oregon Court of Appeals affirmed in a written opinion, State v. Mills, 153 Or. App. 611 (1998), and the Oregon Supreme Court denied review, State v. Mills, 328 Or. 275 (1999). (Exs. 106-114.)

Petitioner filed a petition for post-conviction relief in Malheur County Circuit Court, Case No. 0008488M. (Exs. 115-138.) The post-conviction court denied relief. (Exs. 139-141.) Petitioner appealed the denial of post-conviction relief to the Oregon Court of Appeals, but the Court of Appeals affirmed without opinion, Mills v. Lampert, 187 Or. App. 281 (2003). (Exs. 142-145.) The Oregon Supreme Court denied review, Mills v. Lampert, 335 Or. 654 (2003). (Ex. 146-149.)

## II. DISCUSSION

In his petition for habeas corpus relief, petitioner raises the following claims for relief:

**Ground One:** Trial counsel errored [sic] in allowing prejudicial character evidence and the Oregon Court of Appeals errored [sic] in denying petitioner's constitutional right to a Chapman determination of harmless error.

**Supporting FACTS . . . :** On direct appeal it was argued that irrelevant and prejudicial character evidence should have been excluded and that such failure to exclude was not harmless error under Chapman v. Calif. standard. The Court of Appeals did determine that the evidence should have been excluded but, under state law, was harmless error. The Court of Appeal, however, failed to reach the federal question raised under Chapman. Under Chapman, the error would not have been harmless, and relief would have been forthcoming.

**Ground Two:** Petitioner was denied effective assistance of counsel as required under U.S. Const. (Amend. 6).

**Supporting FACTS . . . :** Counsel was ineffective in that: failure of defense counsel to exercise reasonable professional skills and judgment. Failure to object to improper remarks and/or references. Failure to poll jury when instructed by defendant. Not calling witnesses. Not object to objectionable issues. Failure to report to the court of prosecutor's tampering with defense witness. Failure to properly prepare and/or call witnesses. Failure to supply evidence for hearing on motion to dismiss/request for new trial. Failure to object to prosecution's use of evidentiary presumptions and speculative opinions. Failure to inform the court about victim's arrest for drugs prior to sentencing, which proved in one part perjury of victim's prior testimony.

**Ground Three:** Appellate counsel was ineffective.

Findings and Recommendation - 2

**Supporting FACTS . . . :** Appellate counsel failed to raise issues on appeal that were preserved at trial, and worthy of relief.

**Ground Four:** Post-conviction court misinterpreted <u>Strickland</u> standard of review and Oregon appellate courts erroneously let that interpretation stand.

**Supporting FACTS . . . :** The Court of Appeals erred in affirming the circuit court's decision that "[the] petitioner did not prove any of his claims by a preponderance of the evidence," which controverts the <u>Strickland</u> standard as restated in <u>Williams v. Taylor</u>, 529 U.S. 362, 405-406 (2000). (App. Pro Se Br.).

(Pet. at 6-8.)

In his brief in support of his petition, petitioner addresses arguments that trial counsel rendered ineffective assistance of counsel in preserving his right to trial before a fair and impartial jury, and that the erroneous admission of the prosecution's allegations of his lengthy criminal history violated due process. Petitioner has not addressed his remaining grounds for relief. Despite petitioner's contention that he does not waive the remaining grounds and is entitled to a response from respondent, the court finds that any ground not addressed substantively on the merits in petitioner's brief in support of his petition is deemed waived and should be dismissed. <u>See</u> <u>Von Berckefeldt v. Hall</u>, Civil No. 02-927-CO, Order adopting Findings and Recommendation (D. Or. June 28, 2005) (claims not addressed in memorandum in support of petition for writ of habeas corpus deemed waived); <u>Simmons v. Schiedler</u>, Civil No. 03-644-CO, Order adopting Findings and Recommendation (D. Or. April 22, 2005) (same); <u>Bischoff v. Lampert</u>, 02-787-CO, Order adopting Findings and Recommendation (D. Or. April 20, 2005) (same); <u>Wildin v. Thompson</u>, Civil No. 99-204-CO, Order adopting Findings and Recommendation (D. Or. Nov. 5, 2003) (same).

<u>Procedural Default</u>

As to the grounds addressed by petitioner in his brief in support of petition for relief, respondent contends that petitioner has procedurally defaulted any claim that his federal

constitutional due process rights were violated by the admission of his criminal history. He contends that this ground is procedurally defaulted because petitioner failed to assert this claim in his petition for review to the Oregon Supreme Court. Petitioner contends that he adequately exhausted his due process claim and it is not procedurally barred. Petitioner contends that, in his petition for review, he specifically stated he was raising the claim that admission of the evidence was not harmless error, which was the same argument made on the basis of <u>Chapman</u> before the Oregon Court of Appeals.

The requirement that state remedies be exhausted is satisfied when the petitioner has fairly presented the substance of the federal claim to the state courts. This means that the state court must be provided with "a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim. It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." <u>Anderson v. Harless</u>, 459 U.S. 4, 6 (1982) (citations omitted). State courts must be alerted to the fact that a prisoner is asserting a claim under the United States Constitution. The "mere similarity of claims is insufficient to exhaust." <u>Duncan v. Henry</u>, 513 U.S. 364, 365-66 (1995); <u>Picard v. Connor</u>, 404 U.S. 270, 276 (1971). The Ninth Circuit has found that, under <u>Duncan</u>, "general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion." <u>Hiivala v. Wood</u>, 195 F.3d 1098, 1106 (9th Cir.1999) (citing <u>Gray v. Netherland</u>, 518 U.S. 152 (1996)); <u>Shumway v. Payne</u>, 223 F.3d 982, 987 (9th Cir. 2000). In the Ninth Circuit, a petitioner seeking habeas corpus relief under 28 U.S.C. § 2254 exhausts available state remedies "only if he characterized the claims he raised in state proceedings *specifically* as federal claims"; that is, "the petitioner must have either referenced specific provisions of the federal constitution or statutes or cited to federal case law." <u>Lyons v. Crawford</u>, 232 F.3d 666, 670 (9th Cir.

2000), <u>as amended</u>, 247 F.3d 904 (9th Cir. 2001) (italics in original, footnote omitted).

A habeas petitioner's claim has been exhausted if the claim has been fairly presented to the highest state court with jurisdiction to consider the claim, and no state remedy remains available. <u>Johnson v. Zenon</u>, 88 F.3d 828, 829 (9th Cir. 1996). A claim is not fairly presented if it is raised in a "procedural context in which its merits will not be considered." <u>Castille v. Peoples</u>, 489 U.S. 346, 351-52 (1989).

A procedural default occurs when a petitioner violates a state procedural rule which would constitute adequate and independent state grounds to bar review in the United States Supreme Court. <u>Coleman v. Thompson</u>, 501 U.S. 722, 729-32 (1991); <u>Wells v. Maass</u>, 28 F.3d 1005, 1008-11 (9th Cir. 1994). The failure to present a claim which would be procedurally barred in state court fulfills the technical requirement of exhaustion of state remedies. <u>Coleman</u>, 501 U.S. at 732, 735 n.1.

A federal court will not consider a claim that has been procedurally defaulted unless petitioner shows both "cause" and "prejudice" for the default, or demonstrates that the failure to consider the claim will result in a fundamental miscarriage of justice. <u>Wainwright v. Sykes</u>, 433 U.S. 72, 90-91 (1977); <u>Coleman</u>, 501 U.S. at 749. "Cause" is a legitimate excuse for the default due to something external to the prisoner. <u>Coleman</u>, 501 U.S. at 753. "Prejudice" is "actual harm resulting from the alleged constitutional violation." <u>Thomas v. Lewis</u>, 945 F.2d 1119, 1123 (9th Cir. 1991). "A fundamental miscarriage of justice occurs when a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Boyd v. Thompson</u>, 147 F.3d 1124, 1127 (9th Cir. 1998) (internal quotations omitted).

On direct appeal, petitioner assigned as error in the Court of Appeals: "The trial court erred when, over objection, it admitted evidence that the 37-year-old defendant had been involved with

the criminal justice system for over 20 years, or since he was a juvenile." (Ex. 106 at I, 7.) In support of his argument, petitioner cited the Oregon Evidence Code and Oregon state cases. In addressing the harmless error inquiry, he argued, in conclusion, that the court could not say that "there was 'little likelihood that the error affected the verdict," citing State v. Hansen, 304 Or. 169, 180 (1987). Petitioner then stated, "Defendant's right to a fair trial was violated. *Chapman v. California*, 386 US 18 [] (1967)." (Ex. 106 at 19.) Petitioner's pro se supplemental brief does not raise the issue of his criminal history. (Ex. 107.) The only federal constitutional question addressed by the Court of Appeals in its written opinion concerned petitioner's claim relating to sentencing under a state statute. The Court of Appeals found that, under the harmless error standard of State v. Phillips, 314 Or. 460 (1992), the erroneous admission of evidence of petitioner's prior involvement in the criminal justice system was harmless because there was little likelihood that the admitted evidence affected the verdict. Mills, 153 Or. App. at 616. In his petition for review in the Oregon Supreme Court, petitioner argued that the Court of Appeals "misapplies the harmless error standard," and contended that, "While the complained error on review may appear to be one of mere misapplication of the harmless evidence analysis, the roots of the problem lie with the Court of Appeals' methodology, and the defects in that methodology warrant review." (Ex. 111 at 6.) Petitioner argued that the Court of Appeals used the incorrect scope of review for evidentiary error; it failed to accord proper weight to the context of the evidentiary error; and it improperly weighed different kinds of evidence to determine the harmful impact of the inadmissible evidence. The state case cited in support, State v. Brown, 299 Or. 143, 152-53 (1985), found that the evidence at issue there did not affect a substantial right of defendant there and that there was little, if any, likelihood that the error changed the result of the trial, citing Oregon Evidence Code 103(1) and the Oregon

Constitution, Article VII (amended), section 3. Id. at 152-53 & n.4. Brown does not address any federal constitutional question. Petitioner's supplemental pro se petition for review did not raise a question concerning admission of his criminal history. (Ex. 112.)

In the post-conviction proceedings, petitioner raised only ineffective assistance of counsel claims in support of relief. Although the issue of the admission of petitioner's criminal history is raised, it is raised in the context of a claim that trial counsel provided ineffective assistance of counsel.[1] (Exs. 115, 116, 142, 143, 146, 147.)

As the Ninth Circuit found in Galvan v. Alaska Department of Corrections, 397 F.3d 1198, 1204 (9th Cir. 2005):

> Briefing a case is not like writing a poem, where the message may be conveyed entirely through allusions and connotations. Poets may use ambiguity, but lawyers use clarity. If a party wants a state court to decide whether she was deprived of a federal constitutional right, she has to say so. It has to be clear from the petition filed at each level in the state court system that the petitioner is claiming the violation of the federal constitution that the petitioner subsequently claims in the federal habeas petition. That is, "the prisoner must 'fairly present' his claim in each appropriate state court . . . thereby *alerting* that court to the federal nature of the claim," if she does not say so, then she does not "fairly present" the federal claim to the state court. It may not take much, and as we held in Peterson [v. Lampert, 319 F.3d 1153 (9th Cir. 2003)], the inquiry is not mechanical, but requires examination of what the petitioner said and the context in which she said it. To exhaust a federal constitutional claim in state court, a petitioner has to have, at the least, explicitly alerted the court that she was making a federal constitutional claim.

(Footnotes omitted; citing Baldwin v. Reese, 541 U.S. 27, 29 (2004).)

---

[1] Petitioner argues in his sur-reply that he undeniably raised a constitutional claim, citing Chapman, and asserting that the due process error was not harmless, before the Oregon Supreme Court. (Pet'r Sur-Reply at 11, citing petition for review of post-conviction decision, Ex. 146 at 10.) As discussed, the issue was raised, but it was raised in the context of an ineffectiveness of counsel claim only. Following the reference in the petition for review, petitioner states: "However, that is not the question here. Rather, the question is did Petitioner's counsel render ineffective assistance regarding that issue." (Ex. 146 at 10-11.)

Here, petitioner did not make the federal nature of any due process claim clear at each level of the state court proceedings.  See Baldwin  v. Reese, 541 U.S. 27, 32 (2004); Galvan, 397 F.3d at 1203-05.  In context, petitioner did not make any reference to a federal question in his petition for review on direct appeal, see Gray, 518 U.S. at 162-63; Lyons, 232 F.3d at 668-70 (and cases cited); he did not cite any state case which discusses a federal constitutional issue, see Peterson v. Lampert, 319 F.3d 1153, 1158-59 (9th Cir. 2003) (en banc); nor did  he incorporate his Court of Appeals brief, see Wells, 28 F.3d at 1008-09, 1010.  On this record, the court finds that petitioner has procedurally defaulted his claim that the admission of his criminal history at trial violated due process.

Petitioner may no longer seek relief on the defaulted claim in the state courts.  Petitioner offers no reason why the claim was not timely raised in the state court.  See Coleman, 501 U.S. at 749.  The court finds that petitioner has procedurally defaulted, without excuse, his claim that due process was violated by the admission of his criminal history, as alleged in his habeas petition.  Habeas corpus relief on this ground should be denied based upon procedural default.

Merits

The court will address petitioner's claim that his  trial counsel rendered ineffective assistance of counsel in preserving his right to trial before a fair and impartial jury.

The Antiterrorism and Effective Death Penalty Act (AEDPA), which revised the standards of deference federal courts must accord state court decisions, provides in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d). Further, any factual determinations made by the state courts are presumed to be correct. Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

Under section 2254(d)(1), a state prisoner may obtain federal habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the state court's ruling was either (1) contrary to clearly established federal law, as determined by the Supreme Court of the United States, or (2) involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. Williams v. Taylor, 529 U.S. 362, 404-05 (2000); Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2004), petition for cert. filed, No. 05-5565 (Jul. 26, 2005). These clauses have independent meanings, but in some cases they may overlap. Williams, 529 U.S. at 408; Van Tran v. Lindsey, 212 F.3d 1143, 1150 (9th Cir. 2000), overruled on another ground by Lockyer v. Andrade, 538 U.S. 63 (2003).

"The threshold question under AEDPA is whether [petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." Williams, 529 U.S. at 390. When determining what the clearly established federal law is, federal courts look at the holdings of the United States Supreme Court as of the time of the state court's decision. Id. at 412. Ninth Circuit law may still be considered "for its persuasive authority in applying Supreme Court law." Van Tran, 212 F.3d at 1154; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.), cert. denied, 540 U.S. 968 (2003). "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts

them.'" Powell v. Galaza, 328 F.3d 558, 563 (9th Cir. 2003) (quoting Early v. Packer, 537 U.S. 3 (2002), reh'g denied, 537 U.S. 1148 (2003)).

A state court's decision is "contrary to" clearly established Supreme Court precedent if 1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or 2) the state court "confronts a set of facts that are materially indistinguishable" from a Supreme Court case, but still reaches a different result. Williams, 529 U.S. at 405-06, 412-13; Lockyer v. Andrade, 538 U.S. 63, 73 (2003); Clark, 331 F.3d at 1067. A state court's ruling is "contrary to" Supreme Court precedent if it is diametrically different, opposite in character or nature, or mutually opposed to, a Supreme Court holding. Williams, 529 U.S. at 405.

A state court decision involves an "unreasonable application" of Supreme Court precedent if 1) the state court identifies the correct governing rule, but then applies it to a new set of facts in an unreasonable way, or 2) the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. Id. at 407-09; Wiggins v. Smith, 539 U.S. 510, 520 (2003); Clark, 331 F.3d at 1067. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . . [A]n *unreasonable* application of federal law is different from an *incorrect* or *erroneous* application of federal law." Williams, 529 U.S. at 409, 412; Lockyer, 538 U.S. at 75, 76; Wiggins, 539 U.S. at 520; Clark, 331 F.3d at 1067-68. Thus, a federal court may not issue a writ even when it concludes, based on its independent judgment, that the state court, in reaching its decision, applied clearly established federal law erroneously or incorrectly. Williams, 529 U.S. at 412-13; Lockyer, 538 U.S. at 76; Woodford v. Visciotti, 537 U.S. 19, 24, 27 (2002),

Findings and Recommendation - 10

reh'g denied, 537 U.S. 1149 (2003). At a minimum, the objectively unreasonable standard denotes a great degree of deference to the state court. Clark, 331 F.3d at 1068.

"'[T]he only question that matters under § 2254(d)(1),' Lockyer, 123 S. Ct. at 1171, is whether or not the [] state court's decision is contrary to, or involved an unreasonable application of, clearly established Federal law." Clark, 331 F.3d at 1069.

Under section 2254(d)(2), a state prisoner may obtain federal habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Factual determinations by state courts are presumed correct in the absence of convincing evidence to the contrary. Miller-El, 537 U.S. at 340. "A state court decision 'based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding.'" Davis, 384 F.3d at 638 (quoting Miller-El, 537 U.S. at 340).

In this case, the court looks to the decision of the post-conviction court as "the last reasoned decision" as the basis of the state court's judgment. Franklin v. Johnson, 290 F.3d 1223, 1233 n.3 (9th Cir. 2002); Powell, 328 F.3d at 563; Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).

In a memorandum opinion, the post-conviction court stated that in proving his allegations of inadequate assistance of counsel, the burden was on petitioner to prove that his trial counsel's representation fell below the standard of reasonable representation, was not sound trial strategy under the circumstances of the case, and that the inadequate representation had a tendency to affect the results of the prosecution. The court found that petitioner failed to meet the burden in each instance.

As to petitioner's allegation of juror misconduct, the post-conviction court found as follows:

> Having reviewed the voir dire and motion for new trial transcripts, I don't find the threshold issue - that Ms. Capaldo lied. The strongest relationships were with the spouses, Victoria Mills and Leo Capaldo, and even that was vague. Interesting that Mr. Mills didn't know Ms. Capaldo through attending Bi-Mart functions himself, but tries to build a claim on the fact that Ms. Capaldo "must" have known his wife from being there. It does not follow.
>
> As to Ms. Capaldo knowing Ryan Mills, the defendant's brother, that has almost no connection to this case. The information brought up at this hearing could not have possibly been known at the time of voir dire.

(Ex. 139 at 1, 2.) In the court's findings of fact and conclusions of law, after setting forth petitioner's allegations, the court stated as a finding of fact that, as to petitioner's allegations of inadequate assistance of counsel, he had the burden to prove his allegations by a preponderance of the evidence and that he failed to do so on any allegation. The court stated as a further finding of fact:

> 4.  Petitioner alleged that counsel failed to properly bring forth evidence of juror misconduct by juror Anette [sic] Capaldo. After review of the voir dire and motion for new trial transcripts, there is no evidence that juror Capaldo lied regarding her alleged knowledge of Bryan Mills (petitioner's brother) or Victoria Mills (petitioner's wife); or that her knowledge of these people affected her judgment of the case. First, Bryan Mills had no real connection to the criminal case since he didn't testify as a witness. In addition, Bryan Mills testified at the hearing on the motion for new trial that he did not personally know Capaldo, but *believed* she worked the swing shift. The evidence of Capaldo's knowledge of Victoria Mills was vague. Petitioner testified that Capaldo must have known his wife because they attended Bi-Mart functions together, but he admitted that he did not know Capaldo from attending the same functions. This does not follow.

(Ex. 140 at 5.) In the court's conclusions of law, the court concluded in pertinent part:

> 1.  Based on the findings of fact set forth above, in the underlying criminal proceedings, resulting in petitioner's conviction, petitioner was not denied the right to assistance of counsel, as guaranteed by either the United States Constitution and as articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), or the Constitution of the State of Oregon.

. . . .

    4.  Petitioner did not prove any of his claims by a preponderance of the evidence.

(Ex. 140 at 7.)

    In support of his petition for habeas relief, petitioner contends that trial counsel was on notice, but failed to act competently to protect his right to a trial before an unbiased jury.  He contends particularly that trial counsel failed to obtain a specific statement from juror Capaldo to testify on the record during voir dire about whether she knew Bryan Mills[2]; failed to obtain and submit at the motion for a new trial a copy of the voir dire in which juror Capaldo was "non-responsive" to the question whether she knew Bryan Mills; failed to obtain and present at the motion for new trial the records proving that in December 1995, six months before trial, Bryan Mills had been juror Capaldo's direct supervisor and had subjected her to discipline including one day's suspension and a written reprimand including a threat of discharge, and that she was upset with him and asked to be transferred out from under his supervision; and failed to obtain and present evidence that juror Capaldo's husband worked with petitioner's wife, Victoria Mills, and, while she recognized Mrs. Mills when she testified, juror Capaldo did not tell anyone she knew this witness.  Petitioner contends that he was prejudiced by trial counsel's failures.  Petitioner contends that the post-conviction court's decision was an unreasonable determination of the facts in light of the evidence presented to it, and was contrary to, and an unreasonable application of, clearly established federal law.  Petitioner further requests an opportunity to present additional evidence either through records under Rule 7 or an evidentiary hearing under Rule 8, if the court believes that he has not presented sufficient facts to establish his entitlement to relief.

---

    [2]  Mr. Mills' name is spelled "Bryan" and "Brian" in the record.  The court will use "Bryan" as indicated in his affidavit.

Respondent contends that the state court's decision is entitled to deference. Respondent contends that there was no need to offer the voir dire transcript because the judge who heard the motion for new trial was the same judge who presided over the voir dire and there was no dispute that juror Capaldo denied knowing petitioner's brother and ex-wife; petitioner failed to offer any evidence during the post-conviction proceedings on the issue of whether Bryan Mills was adequately briefed or prepared for the hearing, and whether Bryan Mills actually knew juror Capaldo is in dispute; and any connection between the Capaldos and petitioner's ex-wife was "vague," as found by the post-conviction court. Respondent also argues that petitioner's contention that trial counsel was ineffective for failure to obtain a specific statement from juror Capaldo on the record during voir dire about whether she knew Bryan Mills was not asserted as part of his post-conviction proceedings and is, therefore, unexhausted and procedurally barred; and, on the merits on this point, petitioner admitted during the post-conviction proceeding that he did not know of juror Capaldo's purported connection to Bryan Mills until after voir dire was concluded and, therefore, counsel could not possibly have known about it at the time of voir dire.

The clearly established federal law governing ineffective assistance of counsel claims at the time the state court made its decision was set forth by the United States Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>McClure v. Thompson</u>, 323 F.3d 1233, 1241 (9th Cir.), <u>cert. denied</u>, 540 U.S. 1051 (2003); <u>Shackleford</u>, 234 F.3d at 1079-80 (and cases cited). Under clearly established Supreme Court law, to prevail on a claim of ineffective assistance of counsel, petitioner must satisfy a two-part test: petitioner must show both that trial counsel's performance fell outside the wide range of reasonable professional assistance, and that the deficient performance prejudiced the defense. <u>Strickland</u>, 466 U.S. at 687. There is a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance.  <u>Id.</u> at 689.  A petitioner must identify the acts or omissions of counsel that petitioner alleges were not the result of reasonable professional judgment.  <u>Id.</u> at 690.  The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance.  <u>Id.</u>  The reasonableness of counsel's performance must be judged on the facts of the particular case and viewed at the time of counsel's conduct.  <u>Id.</u>

If counsel's performance is found to be deficient, any deficiencies must be prejudicial to the defense in order to constitute ineffective assistance of counsel.  <u>Id.</u>  at 691.  Petitioner must demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Id.</u> at 694.

The court need not address both components of the ineffective assistance of counsel inquiry if petitioner's showing on one component is insufficient.  <u>Id.</u> at 697.  In particular, the court may dispose of an ineffectiveness claim on the ground of lack of prejudice alone.  <u>Id.</u>  The ultimate focus of the inquiry for the court is, "whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results."  <u>Id.</u> at 696.

The bias or prejudice of one juror violates a criminal defendant's right to a fair trial guaranteed by the Sixth Amendment.  <u>Dyer v. Calderon</u>, 151 F.3d 970, 973 (9th Cir. 1998).  Citing <u>McDonough Power Equipment, Inc. v. Greenwood</u>, 464 U.S. 548, 555-56 (1984), the Ninth Circuit has stated:  "The Supreme Court has held that an honest yet mistaken answer to a voir dire question rarely amounts to a constitutional violation; even an intentionally dishonest answer is not fatal, so

long as the falsehood does not speak a lack of impartiality." <u>Dyer</u>, 151 F.3d at 973.  In "some extreme situations," implied bias may be found.  <u>Smith v. Phillips</u>, 455 U.S. 209, 222 (1982) (O'Connor, J., concurring.)  Trial counsel for a criminal defendant is "the means through which the other rights of the person on trial are secured."  <u>United States v. Cronic</u>, 466 U.S. 648, 653 (1984).

As an initial matter, the court will address petitioner's argument that the decision of the post-conviction court is not entitled to deference because the court applied a standard other than the standard enunciated in <u>Strickland</u>, 466 U.S. 668, applicable to ineffective assistance of counsel claims.  Petitioner contends that the court did not apply <u>Strickland</u> because it never determined whether trial counsel's conduct was within the range of professionally competent assistance; the court never determined whether the outcome on the issue would have been different; and the court applied a preponderance standard on the issues it did decide.

The post-conviction court found that petitioner was not denied the right to assistance of counsel as articulated by the Supreme Court in <u>Strickland</u>.  Its findings of fact clearly indicate that the post-conviction court did not find that trial counsel's challenged acts and/or omissions in relation to alleged juror misconduct was not deficient.  Under <u>Strickland,</u> there is no need for the court to address the prejudice prong if there is no finding that counsel's performance was deficient.  <u>Id.</u> at 691, 697.

Petitioner argues that the post-conviction court imposed an obligation on him to prove his ineffective assistance of counsel claims under a preponderance of the evidence standard "in addition to" the <u>Strickland</u> standard. (Pet'r Mem. at 27.)  Respondent contends that the post-conviction court applied the correct standard and that petitioner misconstrues the post-conviction court's decision.

The Ninth Circuit has stated in this regard:

> To show ineffective assistance, [petitioner] first "must show that counsel's performance was deficient. . . . Second, [he] must show that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 [] (1984). [Petitioner] must prove all facts underlying his claims of ineffective assistance by a preponderance of the evidence. See, e.g., McKenzie v. McCormick, 27 F.3d 1415, 1418-19 (9th Cir. 1994).

Alcala v. Woodford, 334 F.3d 862, 869 (9th Cir. 2003); Davis, 384 F.3d at 638 ("The petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief" (citing Silva v. Woodford, 279 F.3d 825, 835 (9th Cir.), cert. denied, 537 U.S. 942 (2002)). Here, the post-conviction court stated in its memorandum opinion that petitioner had the burden of proving that his trial counsel's representation fell below the standard of reasonable representation, was not sound trial strategy, and that he was prejudiced as a result. In its findings of fact included its separate findings of fact and conclusions of law, the court found that petitioner had not proved his ineffective assistance of counsel claims by a preponderance of the evidence. In its conclusions of law, the court found that petitioner was not denied the right to assistance of counsel as guaranteed by the United States Constitution "and as articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984)." (Ex. 140 at 7.) The court further found in its conclusions of law that petitioner had not proved any of his claims by a preponderance of the evidence.

Both parties cited to Strickland in their briefs to the court. The post-conviction court specifically found that petitioner was not denied his right to effective assistance of counsel as enunciated in Strickland. The court is satisfied that the post-conviction court applied the proper standard to petitioner's ineffective assistance of counsel claims.

Petitioner contends that trial counsel was ineffective for failing to obtain a specific statement from juror Capaldo on the record during voir dire about whether she knew Bryan Mills. In his briefs

to the court, petitioner characterizes juror Capaldo's response as non-responsive, evasive, or not clearly responding to the questions posed to her. During voir dire, the court informed the prospective jurors that if any juror knew or had any association with any of the parties, attorneys, witnesses, or if they had any knowledge or had formed any opinion about the case, they needed to bring it to the court's attention. (Ex. 103 at 3.) Petitioner's trial counsel questioned juror Capaldo as follows:

> MR. PEREZ: Ms. Baker, do you agree with that? Okay. That's all I have thank you. Excuse me, I do have two more questions. I wanted to clarify. Ms. Capaldo, you work at ORE-IDA?
> MS. CAPALDO: (INAUDIBLE)
> MR. PEREZ: Mr. Mills' brother works at ORE-IDA, do you know him?
> MS. CAPALDO: (INAUDIBLE)
> MR. PEREZ: Okay. That's it, thank you.

(Ex. 103 at 24.) Petitioner's brother, Bryan Mills, was not identified by name. Counsel states in his affidavit offered in the post-conviction proceeding that his recollection was that juror Capaldo denied knowing petitioner or his brother. (Ex. 130 at 2.) The record indicates that trial counsel was not aware at the time of voir dire that petitioner's brother, Bryan Mills, was a supervisor at Ore-Ida. Counsel states in his affidavit that he learned during trial or at the conclusion of trial that "Capaldo worked under Brian Mills at Ore-Ida Foods." (Ex. 130 at 2; see Ex. 135 at 2.)

There is no indication in the record that juror Capaldo did not provide a specific answer, was non-responsive or evasive, or did not clearly respond, to counsel's question whether she knew petitioner's brother who worked at Ore-Ida; the record shows only that her response was inaudible to the court reporter; counsel's recollection was that she denied knowing petitioner's brother. Counsel's recollection is consistent with the record, and there is no evidence to dispute that juror Capaldo answered counsel's question in the negative. On that record, there was nothing more that counsel could have done at the time of voir dire questioning.

Petitioner contends that trial counsel was ineffective in failing to submit a copy of the voir dire to the court in support of the motion for new trial. It appears from the record that the trial judge who presided over voir dire was the same judge who heard petitioner's motion for new trial. Therefore, he was familiar with juror Capaldo's response to trial counsel's specific questions regarding petitioner's brother.

Petitioner also contends that trial counsel was ineffective for failing to obtain and present at the motion for new trial the material indicating that in December 1995, Bryan Mills supervised juror Capaldo and subjected her to discipline, after which she asked for a transfer.[3] At the time of the motion for new hearing, in mid-1996, the record shows that trial counsel knew from petitioner that Bryan Mills was a foreman at Ore-Ida Foods. Bryan Mills testified at the hearing on the motion for new trial that he was a production foreman; he worked revolving shift and used to work swing shift; he'd had occasion to go to all departments in the past and had worked in every department; and he was engaged in training in June 1996 of all hourly employees in the processing department. As to juror Capaldo, the following testimony was elicited:

> Q.  Are you familiar with a woman named Annette Capaldo?
> A.  I believe she works swing shift.
> Q.  You, you don't know her personally?

---

[3] Petitioner contends that the post-conviction court's decision is not entitled to deference because it did not acknowledge and address these "critical facts" relating to Bryan Mills disciplining of juror Capaldo. (Pet'r Sur-Reply at 7.) The court referred to "The information brought up at this hearing" in connection to Bryan Mills, which is a reference to Bryan Mills January 2001 affidavit in which he relates for the first time that he disciplined juror Capaldo in December 1995. The court found that Bryan Mills testified at the hearing on the motion for new trial that "he did not personally know Capaldo, but *believed* she worked the swing shift." (Ex. 140 at 5.) The court found first that there was no evidence that juror Capaldo lied regarding her "alleged" knowledge of Bryan Mills, or that her knowledge of Bryan Mills affected her judgment of the case. (Ex. 140 at 5.) On this record, the court does not agree that the post-conviction ignored the facts in reaching its decision.

A.      No, I don't.
Q.      Okay.  Do you have any idea why she might know you?
A.      I just came off of swing shift right when she got hired.  Everybody on swing shift knows me.  Everybody in the whole facility, actually, knows me.  I work all departments, all shifts.  There's no reason why she wouldn't.

(Ex. 105 at 222.)  Four-and-one-half years later, Bryan Mills stated in an affidavit in the post-conviction proceedings that he had disciplined Capaldo, offering details on something that happened five years before.  However, at the time of the motion for new trial, there is no indication in the record, other than petitioner's speculation that counsel's discussion with Bryan Mills before the hearing did not prepare him for the hearing, that any pre-hearing discussions between counsel and Bryan Mills did not apprise Bryan Mills of the substance of his testimony.  Yet, there is nothing in Bryan Mills' testimony which would have put counsel on notice at that time that Bryan Mills directly supervised juror Capaldo, which might have warranted further investigation by counsel into the matter.  Bryan Mills testified that he was not working on the swing shift when Capaldo was hired, and there was nothing else which would indicate to a reasonable attorney that there was any connection between the two, other than that they worked at the same plant.  There is no evidence in the record that juror Capaldo knew petitioner's brother was Bryan Mills; and there is no evidence that juror Capaldo lied or was dishonest in her responses to counsel's questions on voir dire as to her knowledge of petitioner's brother.

Petitioner further contends that trial counsel was ineffective for failing to present evidence that juror Capaldo's husband worked with petitioner's wife, Victoria Mills, and that juror Capaldo recognized Mrs. Mills when she testified at trial but did not tell anyone.  During voir dire, the court informed the prospective jurors that if any juror knew or had any association with any of the parties, attorneys, or witnesses, or if they had any knowledge or had formed any opinion about the case, they

needed to bring it to the court's attention. (Ex. 103 at 3.) Both the state's attorney and petitioner's trial attorney identified Victoria Mills as a witness and both stated that she worked at Bi-Mart. (Ex. 103 at 3, 4.) Counsel states in his affidavit offered in the post-conviction proceeding that his recollection was that juror Capaldo denied knowing petitioner's wife, Victoria Mills, among other witnesses. (Ex. 130 at 2.) There is no evidence in the record which supports petitioner's argument that juror Capaldo in fact recognized Victoria Mills; she was identified by both parties on voir dire as a witness at trial and it was stated that she worked at Bi-Mart. In addition, petitioner testified at his deposition taken at the time of the post-conviction proceeding that he, as the spouse of Victoria Mills, did not personally know juror Capaldo. An affidavit of Victoria Mills was offered in the post-conviction proceeding and she says nothing about whether she knew either juror Capaldo or her husband, or whether she had socialized with them. On this record, again, there was nothing to alert a reasonable attorney at the time of the motion for new trial of any connection between juror Capaldo and any trial witness.

Petitioner contends that he was prejudiced because if trial counsel had obtained and presented the necessary evidence, it is more than reasonably probable that he would have preserved his right to trial before a fair and impartial jury because he would have uncovered juror Capaldo's bias and either removed her on voir dire or obtained the grant of a new trial. Petitioner's argument is based on speculations and are not supported by the facts in the record. On this record, the court finds that, even if trial counsel's acts and/or omissions could be said to be deficient, petitioner has not shown that he was prejudiced as a result. Plaintiff offers nothing to show that juror Capaldo was actually biased; there is nothing in the record to show that she hid knowledge from the court or that she lied to get a place on the jury panel. Petitioner offers nothing to show that, even if juror Capaldo knew

either Bryan Mills or Victoria Mills, that knowledge affected her impartiality, as the post-conviction court so found, (Ex. 140 at 5). See Dyer, 151 F.3d at 973 ("[E]ven an intentionally dishonest answer it not fatal, so long as the falsehood does not bespeak a lack of impartiality.").

To the extent that petitioner challenges the factual determinations made by the state court, petitioner has not come forward with clear and convincing evidence to rebut the presumption of correctness accorded them. The court finds that the state court's decision was neither contrary to, nor an unreasonable application of, Supreme Court law; nor was it an unreasonable determination of the facts, as petitioner argues, so as to warrant habeas relief. Petitioner is not entitled to relief on his claim that he was denied effective assistance of counsel because counsel failed to preserve his right to trial before a fair and impartial jury.

Request to present additional evidence

Petitioner requests an opportunity to present additional evidence, either through records, Rule 7 of the Rules Governing § 2254 Cases , or through an evidentiary hearing, Rule 8. Petitioner does not identify what evidence he seeks to present to the court and offers no argument in support of his request.

Under Rule 7, the record may be expanded by the inclusion of additional materials relevant to the determination of the merits of the petition; Rule 8 addresses evidentiary hearings. The Supreme Court in Holland v. Jackson, 542 U.S. 649, 124 S. Ct. 2736, 2738 (2004) (per curiam), determined that certain statements offered by petitioner as newly discovered evidence following denial of post-conviction relief, could have been the subject of an evidentiary hearing in the federal habeas proceeding, "but only if [the state prisoner] was not at fault in failing  to develop that

evidence in state court or (if he was at fault) if the conditions prescribed by § 2254(e)(2) were met."[4] (Citing <u>Williams v. Taylor</u>, 529 U.S. 420, 431-37 (2000).)  The Court went on to state: "Those same restrictions apply *a fortiori* when a prisoner seeks relief based on new evidence *without* an evidentiary hearing."  <u>Holland</u>, 542 U.S. at ___, 124 S. Ct. at 2738.  Petitioner offers no reasons to show that he is entitled to present further evidence to the court by way of expanding the record or at an evidentiary hearing.  Petitioner's request should be denied.

## III.  RECOMMENDATION

Based upon the foregoing, it is recommended that the petition for writ of habeas corpus be denied and this case dismissed; and that judgment be entered denying the petition for writ of habeas corpus and dismissing this case with prejudice.

*__This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals__.*  **Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.** *__The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the court.  Thereafter, the parties have ten days__*

---

[4] 28 § 2254(e)(2) provides:
(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–
(A) the claim relies on–
(I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

**_within which to file a response to the objections._**  Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this __15___ day of  September, 2005.

_____/s/_____
UNITED STATES MAGISTRATE JUDGE